**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Case No. 1:25-cr-00177-JKB |
| | * | |
| SALAMAH AUDI, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \*

**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION TO DISPENSE WITH
THE PRESENTENCE REPORT AND TO PROCEED TO SENTENCING ON JUNE 17, 2026**

COMES NOW the Defendant, Salamah Audi, by and through undersigned counsel, Tony N. Garcia, Esquire, and Garcia Law, PC, and respectfully submits this Sentencing Memorandum and Motion to Dispense with the Presentence Report and to Proceed to Sentencing on June 17, 2026, and in support thereof, states as follows:

Salamah Audi will plead guilty on June 17, 2026, to Count One of the Indictment, a single violation of 18 U.S.C. § 875(c). The parties have agreed to recommend, jointly, a sentence of eighteen months. Ms. Audi has been held without interruption since her arrest on January 25, 2025 — by the day of the plea, nearly seventeen months. She asks the Court to take three steps at that hearing, the first two of which the Government does not oppose: to dispense with a presentence report under Federal Rule of Criminal Procedure 32(c)(1)(A)(ii); to proceed directly to sentencing; and to impose a sentence consistent with the parties' joint recommendation.

The reason the first two requests matter is the third fact. For a defendant whose detention has, by the defense's understanding, already reached the term the parties agree is appropriate, the weeks consumed by a presentence investigation are not a formality. They are additional imprisonment that no later order can return.

### I.  Background and Posture

Between 2022 and 2025, Ms. Audi — a woman who had converted from Islam to Christianity and come to believe, sincerely and with deepening intensity, that she had been chosen by God — published writings on a personal blog directed at two Washington County churches and certain of their members. The writings issued from a period of acute personal crisis: the death of the grandmother who raised her, the loss of custody of her two young children, and

1

a religious conversion that consumed her. Their content was, by turns, scriptural, anguished, and threatening. Ms. Audi accepts responsibility for the count of conviction and has admitted that the charged communication crossed from protected expression into a true threat.[1]

Ms. Audi was arrested by Hagerstown Fire Marshals on January 25, 2025, and has remained in continuous custody — first in state detention and then on the federal indictment — since that date. She was ordered detained on July 3, 2025, and her successive motions to reopen detention were denied, most recently without prejudice on February 6, 2026. (ECF Nos. 15, 21, 34.) She has no history of violence against any person and no weapons; her prior record consists of two misdemeanors. A court-ordered evaluation found her competent to stand trial.

### II.  The Court Should Dispense With the Presentence Report and Proceed to Sentencing on June 17

Rule 32 ordinarily requires a presentence investigation, but it expressly permits the Court to forgo one where "the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record." Fed. R. Crim. P. 32(c)(1)(A)(ii). This is such a case, for three reasons.

First, the record is unusually complete. The parties have executed a written plea agreement containing a stipulated statement of facts and a stipulated Guidelines framework. (Plea Agreement ¶¶ 6–9 & Att. A.) The offense conduct is documented in detail. Ms. Audi's history and characteristics are developed across the detention record, a competency evaluation, and the materials submitted herewith. The single matter on which the parties differ — the application of two offense-level enhancements — turns on materials already in the record and can be resolved at the hearing, as set out in Part IV. The Court therefore has before it everything a presentence report would supply, and more.

Second, the parties jointly recommend a specific sentence, and the Government does not oppose either dispensing with the report or proceeding to sentence on June 17. (Plea Agreement

---

[1]She maintains, and will note at the hearing, factual disagreements with certain collateral characterizations in the record and with the facts underlying the contested Guideline enhancements the parties have left to the Court. None bears on the elements of the offense, on her acceptance of responsibility, or on the jointly recommended sentence.

¶ 12.) Ms. Audi, for her part, has executed a written waiver of the presentence report and its attendant timing, with full understanding of the rights she relinquishes. (Ex. A.)[2]

Third — and this is what lends the request its urgency — Ms. Audi has been detained without interruption since January 25, 2025. It is the defense's understanding that, by June 17, 2026, the time she will have served, together with the good-conduct credit available under 18 U.S.C. § 3624(b), will equal or exceed the eighteen-month term the parties recommend.[3] If that understanding is correct, then deferring sentencing to permit a report — a process that consumes weeks — would keep Ms. Audi confined beyond the very term the parties agree is sufficient. Detention should not be prolonged by administrative inertia, and the Court's authority to dispense with the report exists for precisely this circumstance.

Nor do the two contested enhancements require a report. The parties have left to the Court a single, discrete question — whether the enhancements at U.S.S.G. §§ 2A6.1(b)(1) and (b)(4) apply. (Plea Agreement ¶ 8.) That question turns entirely on materials already before the Court: the stipulated facts, the blog posts themselves, and the detention record. Rule 32 directs the Court, "for any disputed portion of the presentence report or other controverted matter," to "rule on the dispute" at the sentencing hearing. Fed. R. Crim. P. 32(i)(3)(B). The same completeness of record that permits the Court to dispense with a report permits it to resolve that dispute on June 17 — and, for the reasons set out in Part IV, to resolve it in Ms. Audi's favor.

### III. The Advisory Guidelines and Criminal History

So that the Court has the calculation a report would otherwise furnish, the defense sets out the Guidelines framework below.

| Guidelines Calculation | Level |
|---|---|

---

[2]The defendant may not unilaterally waive preparation of the report; the decision to dispense with it rests with the Court upon the finding Rule 32(c)(1)(A)(ii) requires. *See* U.S.S.G. § 6A1.1 cmt. The waiver at Exhibit A reflects Ms. Audi's informed consent and supports that finding; the parties jointly request that the Court exercise its authority to proceed without a report.

[3]By June 17, 2026, Ms. Audi will have been detained for approximately 508 days since January 25, 2025. An eighteen-month term, reduced by the good-conduct credit available under 18 U.S.C. § 3624(b) (up to 54 days per year), is satisfied by roughly 466 days of custody. The defense does not ask the Court to compute that credit, which is committed to the Bureau of Prisons. *See* 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329 (1992). The point is noted only to show what is at stake in the timing of the hearing.

| | |
|---|---|
| Base offense level — U.S.S.G. § 2A6.1(a) | 12 |
| Two or more threats — § 2A6.1(b)(2)(A) | +2 |
| **Subtotal** | **14** |
| Acceptance of responsibility — § 3E1.1(a) | –2 |
| **Adjusted offense level (defense position)** | **12** |
| Criminal History Category | I |
| **Advisory guideline range** | **10–16 months** |
| Government-sought enhancements — contested; *see* Part IV (§§ 2A6.1(b)(1) [+6], (b)(4) [+4]) | — |

Ms. Audi's criminal history places her in Category I. Her record consists of two misdemeanors — a 2023 conviction for driving under the influence and a 2024 conviction for malicious destruction of property valued under $1,000, the latter arising from the same church dispute underlying this case. The parties did not stipulate to criminal history, (Plea Agreement ¶ 10), but the defense's computation yields Category I, and in no event more than II. At Category I, an offense level of twelve produces an advisory range of 10–16 months. The jointly recommended eighteen months sits at — indeed marginally above — the top of that range, and well below the 37–46 months that would result (level 21, Category I) were both contested enhancements applied. The recommendation is, on any view, a measured one.

### IV. The Two Contested Enhancements Should Be Resolved in Ms. Audi's Favor

The plea agreement preserves two enhancements for argument at sentencing. (Plea Agreement ¶ 8.) In contesting them, Ms. Audi does not retreat from the count to which she pleads guilty or from her acceptance of responsibility; the agreement itself reserves these questions for the Court, and a defendant forfeits nothing by pressing a reservation the Government agreed she could press. On the merits, the Government — which bears the burden of proving each enhancement by a preponderance of the evidence — cannot carry it.

### A. Section 2A6.1(b)(1): the record shows no conduct evidencing an intent to carry out the threat.

The six-level enhancement applies only "[i]f the offense involved any conduct evidencing an intent to carry out such threat." U.S.S.G. § 2A6.1(b)(1). The phrase requires conduct — "some

4

form of overt act" — pointing toward execution of the threat, not merely the making of it; and where the conduct relied upon predates the offense, it counts only if it is "substantially and directly connected to the offense." U.S.S.G. § 2A6.1 cmt. n.1; *see United States v. Goynes*, 175 F.3d 350, 355 (5th Cir. 1999) (requiring "some form of overt act"). The enhancement is built for the defendant who acquires the weapon, assembles the device, or stakes out the target — who takes a step that turns words toward their execution.

The record here shows the opposite. Across years and thousands of posts, Ms. Audi never once translated word into physical harm to any person. She acquired no weapon — Pretrial Services confirms she has none registered — conducted no surveillance, and took no step toward executing any threat charged. The violence in the posts is, characteristically, consigned to God or to prayer: she writes that she has "asked God to kill," that "He's going to take her life." The single physical act anywhere in this history is a thrown rock and a broken window — an offense against property, prosecuted in state court as misdemeanor malicious destruction, and committed in November 2023, months before the earliest threat charged in this case (June 2024). That act cannot bear the weight the enhancement demands. It is not an overt step toward carrying out a threat to injure a person; and, having occurred before the offense, it is not "substantially and directly connected" to it. § 2A6.1 cmt. n.1. A broken pane of glass is not evidence of an intent to commit murder. The enhancement should not apply.

### B.  Section 2A6.1(b)(4): the offense caused neither substantial disruption nor substantial expenditure.

The four-level enhancement applies only if the offense "resulted in (A) substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense." U.S.S.G. § 2A6.1(b)(4). The operative word is *substantial*. The record reflects that two churches engaged off-duty officers for a limited number of services, and that one window, valued at roughly $800, was broken and repaired. Those are ordinary, prudent precautions; they are not the order of disruption or remediation the enhancement was written to capture. The Government has not shown — and on this record cannot show — that a few hours of off-duty security and the replacement of a single pane of glass amount to a substantial disruption of governmental or business functions, or a substantial expenditure to "clean up, decontaminate, or otherwise respond." The burden of proving otherwise is the Government's, and it is not met.

### V.  The § 3553(a) Factors Support the Recommended Sentence

A sentence must be "sufficient, but not greater than necessary," to serve the purposes of sentencing. 18 U.S.C. § 3553(a). The Court weighs the nature of the offense and "the history and characteristics of the defendant," § 3553(a)(1), on which "[n]o limitation shall be placed," 18 U.S.C. § 3661; *see Pepper v. United States*, 562 U.S. 476, 487–88 (2011); *Williams v. New York*, 337 U.S. 241, 246–47 (1949); it weighs the need to provide the defendant "the most effective" correctional treatment, § 3553(a)(2)(D); and it makes "an individualized assessment based on the facts presented," *Gall v. United States*, 552 U.S. 38, 49–50 (2007). Three characteristics bear emphasis.

### A.  Ms. Audi is the mother of two young children.

Ms. Audi has a son and a daughter, roughly seven and six years old. She lost custody during the crisis that produced this case, and the separation from her children has been, by every account, the most painful feature of her confinement. The prospect of resuming a place in their lives is real: their father has indicated his willingness for them to return to her care. A sentence that returns Ms. Audi to the community — under supervision and treatment — serves not only her, but two children who have already lost more than a year of their mother.

### B.  Ms. Audi has no serious criminal history and no history of violence.

Her record is two misdemeanors. She has never been convicted of a crime of violence, owns no weapons, and — across the entire course of the conduct charged here — never once translated word into physical harm to any person. The danger the Government identifies is genuine, but it is specific and verbal: a danger of words. Such a danger is answered far more precisely by conditions that remove the tools and the targets of those words than by further imprisonment.

### C.  Ms. Audi is a person of sincere faith, and the law does not sit in judgment of belief.

Ms. Audi believes, deeply and sincerely, that she has been touched by Christ and spoken to by God. Our law has never presumed to decide whose revelations are real. It extends to the believer who says God has spoken to her the same indifference to proof that it extends to every congregation professing as much on a Sunday morning; the First Amendment does not protect faith only until someone professes to have heard an answer. What separates this case from

6

ordinary devotion is not the belief — which is hers, and beyond the reach of this or any court — but a season of illness that turned prayer into threat. Ms. Audi is to be sentenced for the threat she has admitted, not for the faith she still holds.

That same record points to what a just sentence requires. Ms. Audi's decompensation tracked identifiable losses — the death of the grandmother who raised her and the loss of custody of her children. The danger the record describes is bound to those circumstances and to the unsupervised access to internet and devotional platforms through which the posts were made; it is a danger that structure and treatment can contain, and one Ms. Audi has expressed her readiness to address. The most effective response to that picture, § 3553(a)(2)(D), is a course of supervision and care in the community — not the continued incarceration of a woman who has already served the term the parties agree is sufficient.

Consistent with the statutory purposes of protecting the public and providing treatment, Ms. Audi proposes — and does not resist — a robust set of conditions of supervised release: mandatory mental-health treatment, including medication management as prescribed; a prohibition on internet-capable devices and on social-media or blogging platforms except as supervised; a no-contact order, direct and indirect, covering the identified victims, churches, and their members; and exclusion from Washington County and the locations associated with the churches. These conditions address the only danger the record identifies, and they address it directly.

### VI. Conclusion

For the foregoing reasons, Ms. Audi respectfully requests that the Court: (1) find, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii), that the information in the record enables the Court to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and dispense with the presentence report; (2) proceed to sentencing on June 17, 2026; and (3) impose a sentence consistent with the parties' joint recommendation, together with such conditions of supervised release as will provide treatment and protect the community.

Respectfully submitted,

_____/s/_____
Tony N. Garcia, Esq.
Garcia Law, PC
7 Saint Paul Street, Suite 1100
Baltimore, Maryland 21202
(410) 814-4600
*Counsel for Defendant Salamah Audi*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2026, a copy of the foregoing was filed via the Court's CM/ECF system, and all interested parties were served.

_____/s/_____
Tony N. Garcia, Esq.